## KLAMER FURNITURE CORPORATION v. GERAMI.

### No. 1089.

Court of Appeal of Louisiana. First Circuit.
April 17, 1933.

A. W. Dalferes, of Lafayette, for appellant.

Sandoz & Sandoz, of Opelousas, for appellee.

ELLIOTT, Judge.

Klamer Furniture Corporation alleges that it sold and delivered to J. P. Gerami a suite of furniture for the price and sum of $198.39 for which he refuses to pay. The account showing the articles sold is said to be attached to the petition for reference.

The defendant for answer denies that he purchased the furniture from the plaintiff. He alleges that Maurice Pollingue purchased it from plaintiff's agent, P. C. Doerr, many months before the dates shown on the account sued on, paying therefor in advance. That the obligation on account of the price was, therefore, extinguished by payment and he owes the plaintiff nothing on said account.

There was judgment in favor of the plaintiff as prayed for. Defendant has appealed. The plaintiff took the testimony of Charles W. Siemers by commission. In answering the questions propounded to him, Siemers testified that he was office manager for Klamer Furniture Corporation and it was in that capacity that he answered the questions propounded to him. When plaintiff sought to introduce Siemers' testimony in evidence, defendant objected.

The first objection was to the answers of the witness as a whole on the ground that he was not an officer of the plaintiff but its agent. That it appeared from his answers that P. C. Doerr was also its agent; that the plaintiff was estopped from denying the validity of the contract entered into between P. C. Doerr, its agent, and the defendant; that the proper party to testify as to the existence of the contract between plaintiff and defendant should be plaintiff's agent, P. C. Doerr, and not the said Charles W. Siemers, who was only another agent of the plaintiff. The objection was by the court referred to the merits. The objection involved the merits and was by the court properly referred thereto. The defendant then objected to his answers to interrogatories Nos. 2, 3, 4, and 5 on the ground that they were hearsay. The court ruled that the objection be referred to the merits.

These objections should, we think, have been overruled, but the reference to the merits accomplished no harm.

His answer to interrogatory No. 6 was objected to on the same ground urged as a general objection at the commencement of the offering. The court made the same ruling and we think the ruling was correct.

Defendant also objected to the answers of the witness to cross-interrogatories Nos. 1 and 12. These objections were aimed at the competency of the witness to testify to the matters mentioned in his answers. The court referred the objections to the merits. The subject-matter involved the merits. The ruling was correct.

The record shows that P. C. Doerr was plaintiff's agent with authority to solicit orders for furniture and forward same to be filled by the plaintiff. P. C. Doerr forwarded to plaintiff the order filled and shipped to defendant. As defendant contends that he did not authorize the order, we will describe it.

It bears date October 27, 1927. It is on a form prepared for ordering. It carries at the top the name of P. C. Doerr stamped there with rubber stamp. The balance is partly printed and in part written with lead pencil. Under Doerr's printed address of New Orleans, La., follows the printed statement, "Furniture Factory Representative," and beneath that, "Representing Klamer F. Corp.," of which the word "Representing" is printed and the name "Klamer F. Corp." is written with lead pencil. The order says, "Ship to J. P. Gerami Furn. Co. of Lafayette, La. Via L. C. L." and after the word "when" is written the word "once." After describing the suite of furniture and stating style and price, there is written with lead pencil: "Rush this out L. C. L. as order was delayed through error. If out, ship nearest. This is new account." A few words follow which we cannot make out, after which it is said: "Muller and Dixie, also others, here, ship him open and recommend immediate shipment. He is small but good." It is signed, "P. C. D.," and has stamped on it: "Received November 2, 1927. Klamer Factories, Inc." Mr. Siemers

says that this order to the extent that it is written is in the handwriting of Mr. P. C. Doerr.

The furniture was, in due time, shipped by the plaintiff from its factory at Evansville, Ind., to the defendant at Lafayette, La., pursuant to this order. On December 24, 1927, defendant wrote plaintiff acknowledging receipt of the furniture and complained about a table top, requesting that another be shipped him at once, stating that the defective top would be shipped back to plaintiff. Before writing this letter, defendant had received an invoice from the plaintiff showing that the furniture had been charged to him and the amount due on said account. If defendant had not authorized the shipment and did not consider that he owed plaintiff on said account, it is likely something would have been said about it in this letter but no mention is made of anything of that kind.

The plaintiff complied with defendant's request for another table top and shipped him one. When this top arrived, it was also damaged, upon which defendant wrote plaintiff under date January 21, 1928, requesting that another top be sent him, stating that the one last received had been damaged by the railroad. He further stated that the railroad demanded the cost of each article and requested that an invoice showing the cost of each article be sent him. This second letter is also silent as to the matter urged in the answer as a defense.

Defendant next made out a claim against the Southern Pacific Railroad for damage to the second table top as due himself and collected it and kept it so far as we can see.

On February 14, 1928, defendant wrote plaintiff a third letter in which he says:

"We are returning table top. * * * *Please credit our account.* Reason for returning, don't match other parts of the suite. Enclosed will find bill of lading and also a copy of the letter to me from the customer who purchased the suite from P. C. Doerr." [Signed] J. P. Gerami.

A copy of the letter shows that the original was from Maurice Pollingue and addressed to J. P. Gerami. It bears date December 30, 1927, which was more than a month before defendant wrote the letter of February 14, 1928. In this letter Mr. Pollingue says to defendant:

"Regarding the dining room suite that you delivered to me, which suite you say was billed to you, I wish to say that on 9/26/27 I mailed my check, cash payment in advance, to Mr. P. C. Doerr, New Orleans, Louisiana, P. C. Doerr Furniture Company, 871 Front Street, for $205.75 which was the price of the suite sold to me.

"Yours truly,      M. Pollingue.
"Per Miss D Allen, Bookkeeper."

According to Mr. Siemers, plaintiff's office manager and agent, P. C. Doerr received a commission on orders obtained by him. It does not appear from his evidence that P. C. Doerr had any other connection with or authority from the Klamer Furniture Corporation except to sell furniture by taking orders. It does not appear from his testimony that P. C. Doerr had authority to receive payment for furniture in advance or otherwise.

Mr. Gerami, defendant, testified that he knew nothing about Klamer Furniture Corporation; that he never heard of it until he received this shipment. That he never ordered this furniture and did not authorize its shipment to him. That he never knew P. C. Doerr and never had any dealings with him. That he did not know Frank W. Doerr and had never met him until he (Frank W. Doerr) came to see him after he (defendant) had delivered the furniture to Mr. Pollingue. That he did not know Mrs. Doerr, wife of Frank W. Doerr. He was asked the following:

"Q. Please tell the court what was your connection with the Klamer Furniture Company, plaintiff in this case. A. I did not know anything about the transactions of the suite with Mr. Pollingue until the suite came to me and then later I received the bill. I saw the name of P. C. Doerr and I was wondering who ordered the suite so I 'phoned to Mrs. Doerr and asked her where could I see her husband. I asked her if she knew anything about the suite and she told me that it belonged to Mr. Pollingue so she told me to deliver the suit to Mr. Pollingue and Frank Doerr would make it O. K. with me."

Mr. Gerami testified that he delivered the furniture to Mr. Pollingue on the strength of this conversation with Mrs. Doerr over the telephone. That subsequently her husband, Frank W. Doerr, came to his office and told him it was all right, etc. The substance of all he says may be gathered from the following excerpt:

"Q. Did you talk to Frank Doerr personally before you delivered the furniture? A. No sir. I spoke to his wife.

"Q. Then you delivered the furniture which was billed to you by Klamer Furniture Company to Mr. Pollingue simply on the strength of your conversation with Mrs. Frank Doerr? A. Yes.

"Q. The fact that that shipment was made to you did not cause you to take any other precaution? A. His wife told me to deliver the set and knowing that I had not ordered the furniture, I delivered it."

The record contains a letter which purports to have been written the plaintiff by F. W. Doerr. It is addressed to Klamer Factory, Evansville, Ind., bears date April 5, 1928, and reads as follows:

"Gentlemen—About four months ago I had a dining room suite shipped to the Gerami Furniture Company of this City. So far Mr. Gerami has not got his money for same and, inasmuch as I sold the suite, I am enclosing a settlement that I would appreciate your accepting. Kindly let me know if this is satisfactory.

"Thanking you for your immediate attention in this matter, I am,

"Yours truly,          F. W. Doerr."

The date of this letter is fully six months after that of the check, fully five months after that of the order, and fully three months later than that of the first letter which Mr. Gerami wrote acknowledging receipt of the furniture. Mr. Siemers testified that it contained four checks, all postdated except one. That he immediately notified Mr. Gerami of the receipt of same and informed him that Klamer Furniture Corporation would not accept them, not having had any dealings with F. W. Doerr concerning the furniture, and asked for instructions concerning the checks. That he did not receive any, so he returned the checks to F. W. Doerr with the statement that Klamer Furniture Corporation, not having had any dealings with him concerning the furniture, declined to receive the checks and declined further negotiations with him concerning the matter.

Mr. Pollingue testified in a way indicating that he was not certain whether it was to C. P. Doerr or Frank W. Doerr that he gave the order, but said it was the one living in Lafayette.

Asked who he had purchased from, he said: "Mr. Doerr was the salesman, and I knew nothing of the transaction with the P. C. Doerr Furniture Company. I did not know where it was going to be charged from. I bought it for $205.75 F. O. B. Lafayette." But later in response to question—

"Q. When you gave him the order did he say that he was acting for some one else or for himself? A. For the P. C. Doerr Furniture Company."

He testified that the party who obtained the order told him how to make out the check. The check bears date September 26, 1927. It was drawn on Bank of Lafayette & Trust Company and made payable to the order of P. C. Doerr Furniture Company for $205.75. At the bottom on the left-hand side appears as a memorandum: "Payment in advance. 1 dining room suite" signed "M. Pollingue." It was indorsed: "For deposit. P. C. Doerr Furniture Co." The check was sent through the mail accompanied by a letter from Mr. Pollingue to P. C. Doerr, New Orleans, La., P. C. Doerr Furniture Company, 871 Front street, and which read:

"Dear Sir—You will find enclosed my check for $205.75, cash payment in advance for a dining room suite which is to be shipped from factory and is to be exactly as one seen here in Lafayette. Kindly acknowledge receipt of the above and oblige.

"Yours truly,"

Mr. Pollingue testified that he did not know anything about the Klamer Furniture Corporation. He did not remember that Mr. Doerr told him at the time he spoke to him about the furniture that he was acting for any particular furniture company, but remembered being told that it was going to be charged from the factory, but was not told that it was to be charged to Mr. Gerami.

Responding to later questions, he said that when the furniture was delivered to him a table top was defective and he got it replaced through Mr. Gerami. He was then asked:

"Q. And at no time did you ever have any dealing with Klamer Furniture Corporation concerning the set? A. No, but I did write to the Company making my complaint about the furniture not holding up and they told me that any adjustment that would have to be made would have to be made through the P. C. Doerr Furniture Company.

"Q. Have you got that letter? A. No.

"Q. Could you swear positively that it was said in that letter that the adjustment would have to be made with the P. C. Doerr Furniture Company? A. Well, then I would not swear. In my memory I might be wrong but I say their answer to my complaint was in substance that any adjustment to be made on the furniture would have to be made through the P. C. Doerr Furniture Company."

He testified that the furniture he got was the identical furniture which he ordered, but he meant, of course, that it was the same kind and style. The evidence shows that M. Pollingue of Lafayette, La., ordered a suite of dining room furniture from P. C. Doerr Furniture Company of New Orleans and paid them for it in advance. About a month afterwards, plaintiff received from P. C. Doerr of New Orleans an order for a suite of dining room furniture to be shipped to J. P. Gerami at Lafayette and which Mr. Pollingue says is exactly like the one he ordered from P. C. Doerr Furniture Company. As to whether, if it was the same, the payment by Mr. Pollingue to P. C. Doerr Furniture Company could, under the evidence, be regarded as paid to the plaintiff, we express no opinion for the reason we are not satisfied from the evidence that the suite of furniture which Mr. Pollingue bought from P. C. Doerr Furniture Company is the same suite which P. C. Doerr about a month afterwards directed plaintiff to ship to Mr. Gerami. Defendant claims the existence of a presumption in his favor due to the fact that plaintiff did not obtain the testimony of P. C. Doerr. We do not know why the plaintiff did not ob-

tain his testimony. It is not important that plaintiff did not obtain his testimony because the liability of the defendant is satisfactorily established without it. The defendant alleges payment as his defense and the burden of proof was upon him to show it. Civ. Code, art. 2232. The testimony of P. C. Doerr and F. W. Doerr was as available to the defendant as to the plaintiff and, if their testimony would have helped him establish his defense, he should have obtained it.

The lower court held defendant liable for the furniture shipped him by the plaintiff and the judgment in our opinion is correct.

Judgment affirmed. Defendant, appellant, to pay the cost in both courts.